**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | |
|---|---|
| **WILLIAM B. TURNER,** )<br>Plaintiff, )<br> )<br>v. )<br> )<br> )<br> )<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>Defendant. ) | Civil Action No. 2:10cv00002<br>**REPORT AND<br>RECOMMENDATION**<br><br>By:  PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, William B. Turner, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq*. (West 2003 & Supp. 2010). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Turner protectively filed his application[1] for SSI on May 8, 2006, alleging disability as of September 4, 2002, based on back problems, leg problems, depression, headaches, arthritis and black lung. (Record, ("R."), at 56-59, 62, 67.) The claim was denied initially and upon reconsideration.[2] (R. at 30-32, 35, 36-37.) Turner then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The ALJ held a hearing on May 6, 2008, at which Turner was represented by counsel. (R. at 166-98.)

By decision dated June 26, 2008, the ALJ denied Turner's claim. (R. at 16-24.) The ALJ found that Turner had not engaged in any substantial gainful activity since May 8, 2006. (R. at 18.) The ALJ found that the medical evidence established that

---

[1] Turner has filed prior applications for SSI. (R. at 16.) By decision dated August 10, 1995, Turner received an unfavorable decision, and the Appeals Council denied his request for review. (R. at 16.) By decision dated January 5, 2001, Turner received an unfavorable decision, and the Appeals Council denied his request for review. (R. at 16.) By decision dated August 3, 2002, Turner received an unfavorable decision, and the Appeals Council denied his request for review. (R. at 16.) By decision dated August 3, 2005, he received an unfavorable decision, and the Appeals Council denied his request for review. (R. at 16.) Turner then filed an action with this court, and by Order dated October 24, 2007, this court upheld the ALJ's decision. *See Turner v. Astrue*, No. 1:06cv00087.

[2] Turner's claim was denied, and his case was closed for failure to cooperate. (R. at 137-42.) It was noted that Turner had failed to keep three consultative examination appointments. (R. at 137-42.)

Turner had severe impairments, namely degenerative disc disease, degenerative joint disease, back, knee and shoulder pain and chronic obstructive pulmonary disease, but she found that Turner's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) The ALJ also found that Turner had the residual functional capacity[3] to perform light[4] work that allowed him to alternate sitting and standing and which limited him as indicated by the assessment of Dr. William H. Humphries, M.D., found at Exhibit C-11F4.[5] (R. at 21, 157.) The ALJ found that Turner had no past relevant work. (R. at 23.) Based on Turner's age, education, lack of work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Turner could perform, including jobs as a cashier and an unarmed security guard. (R. at 23-24.) Thus, the ALJ found that Turner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g) (2010).

---

[3]The ALJ noted that Turner had few changes since her August 3, 2005, decision. (R. at 23.) She noted that Turner's then-current residual functional capacity was mostly consistent with his prior residual functional capacity as found on August 3, 2005. (R. at 23.) A review of this court's August 8, 2007, Supplemental Report and Recommendation shows that the ALJ found that Turner retained the residual functional capacity to perform light work, which allowed a sit/stand option, that required only occasional climbing, balancing, stooping, kneeling, crouching and crawling and that required no exposure to extreme temperature changes and no unusual exposure to dust, fumes, chemicals and poor ventilation. *See Turner v. Astrue*, 1:06cv00087, Docket Item No. 19.

[4]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2010).

[5]Dr. Humphries found that Turner would be limited to sitting, standing and walking six hours in an eight-hour workday, lifting items weighing up to 25 pounds occasionally and up to 10 pounds frequently, occasional climbing, kneeling and crawling and that he should avoid heights, hazards and fumes. (R. at 157.)

After the ALJ issued her decision, Turner pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 6-8, 12.) Turner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2010). The case is before this court on Turner's motion for summary judgment filed July 7, 2010, and the Commissioner's motion for summary judgment filed July 29, 2010.

## *II. Facts*

Turner was born in 1954, (R. at 56, 62), which, at the time of the ALJ's decision, classified him as a "person closely approaching advanced age" under 20 C.F.R. § 416.963(d). He has a high school education and vocational training in auto mechanics. (R. at 71, 173.) Turner has past relevant work experience as a carpet installer and furniture framer. (R. at 68.) On his Disability Report, Turner reported that the only medication he took was Aleve. (R. at 75.) Turner reported that he had not worked since 1992. (R. at 80.) Turner testified that he enjoyed reading and that he would do so for up to four hours a day. (R. at 192.)

Robert Jackson, a vocational expert, also was present and testified at Turner's hearing. (R. at 172-82.) Jackson stated that none of Turner's work would be considered relevant because it was past the 15-year time period. (R. at 172.) However, he did classify Turner's work as a carpet installer as heavy[6] and skilled work and his

---

[6]Heavy work involves lifting objects weighing up to 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. § 416.967(d) (2010).

job as a furniture framer as medium[7] and semiskilled work. (R. at 172-73.) Jackson was asked to consider a hypothetical individual who was limited as indicated by the assessment of Dr. Humphries and who would require a sit/stand option. (R. at 159-65, 173.) Jackson stated that such an individual could perform light, unskilled jobs such as a cashier and an unarmed security guard, both of which existed in significant numbers in the national economy. (R. at 173-74.) Jackson stated that if cologne and food odors were considered, that all cashier jobs would be eliminated. (R. at 176.) Jackson stated that if the individual required up to 15-minute breaks so that he could change positions and even lie down, both jobs would be eliminated. (R. at 177.) He also stated that a marked deficit in concentration would eliminate both jobs. (R. at 177.)

In rendering his decision, the ALJ reviewed records from Russell County Medical Center; Dr. J. Randolph Forehand, M.D.; Kathy Jo Miller, M.Ed., a licensed psychological examiner; Robert S. Spangler, Ed.D., a licensed psychologist; and Dr. William Humphries, M.D.

On October 28, 2005, Turner was seen at Russell County Medical Center for complaints of low back pain and right knee pain. (R. at 118-19.) Dr. Norman Rexrode, M.D., reported that Turner had moderate tenderness to palpation in the lower lumbar area. (R. at 119.) An x-ray of Turner's right knee showed arthritis. (R. at 119.) X-rays of Turner's lumbar spine showed a transitional S1 vertebra and degenerative disc disease at the L5-S1 and S1-2 levels. (R. at 120.) Dr. Rexrode diagnosed acute sciatica

---

[7]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2010).

arthritis. (R. at 119.) No limitations were noted.

On January 30, 2006, Turner was examined by Dr. J. Randolph Forehand, M.D., to determine if Turner was eligible for black lung benefits. (R. at 121-35.) A chest x-ray showed pneumoconiosis. (R. at 125.) A ventilatory study was normal. (R. at 123, 126.) A pulmonary function test showed normal ventilatory pattern with evidence of exercise-induced arterial hypoxemia. (R. at 127-33.) An electrocardiogram was normal. (R. at 123, 135.) Dr. Forehand diagnosed coal worker's pneumoconiosis and cigarette smoker's lung disease. (R. at 124.) Dr. Forehand opined that Turner was totally and permanently disabled. (R. at 124.)

On November 20, 2007, Kathy Jo Miller, M.Ed., a licensed psychological examiner, and Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Turner at the request of Disability Determination Services. (R. at 145-49.) Turner described transient depression off and on since 1983. (R. at 146, 148.) He reported that he had received mental health treatment for two years.[8] (R. at 146, 149.) Turner was diagnosed with mild depression, not otherwise specified. (R. at 149.) Miller and Spangler assessed Turner's then-current Global Assessment of Functioning score, ("GAF"),[9] at 60.[10] (R. at 149.)

---

[8]The record does not contain mental health reports to confirm this.

[9]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[10]A GAF score of 60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

Miller and Spangler completed a mental assessment indicating that Turner had a slight limitation in his ability to interact appropriately with the public, with supervisors and with co-workers and to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 151-53.) No other limitations were noted. (R. at 151-53.)

On November 27, 2007, Dr. William Humphries, M.D., examined Turner at the request of Disability Determination Services. (R. at 154-58.) Turner complained of low back pain and joint pain. (R. at 154.) He reported a lifting injury to his lumbar region while on the job in the coal mines. (R. at 154.) Turner reported that he had been diagnosed with black lung. (R. at 155.) He stated that he had difficulty breathing on mild exertion. (R. at 155.) Turner reported that the only medication he took was Aleve. (R. at 155.)

Examination showed slightly reduced range of motion of the neck and back. (R. at 155.) Straight leg raising was negative on the right and positive on the left. (R. at 155.) Turner had full range of motion in both shoulders, elbows, wrists and hands. (R. at 156.) He had some mild synovial thickening of some of the interphalangeal joints of some the fingers in each hand. (R. at 156.) Turner had slightly reduced range of motion in both hips due to lumbar discomfort. (R. at 156.) He had some synovial thickening of some of the interphalangeal joints of some of the toes of both feet. (R. at 156.) Turner had normal grip strength bilaterally. (R. at 156.) Radial, median and ulnar nerve functions were intact bilaterally. (R. at 156.) Fine manipulation was performed adequately bilaterally. (R. at 156.) Gait was mildly painful on the left. (R. at 156.) Turner had normal strength in both lower extremities, with no muscle

wasting. (R. at 156.) He had slightly diminished breath sounds with a few scattered rhonchi and mild end-expiratory wheezes bilaterally. (R. at 156.) Mental examination was normal. (R. at 157.) Dr. Humphries diagnosed chronic lumbar strain with sciatica on the left, probable degenerative disc disease and possible degenerative joint disease of the lumbar spine, mild degenerative joint disease of both hands, knees and feet, mild to moderate chronic obstructive pulmonary disease and tinea versicolor.[11] (R. at 157.)

Dr. Humphries completed an assessment indicating that Turner could frequently lift and/ or carry items weighing up to 10 pounds, occasionally lift and/or carry items weighing up to 20 pounds and never lift and/or carry items weighing up to 50 pounds. (R. at 159.) Dr. Humphries found that Turner could sit, stand and/or walk for up to two hours without interruption and that he could sit, stand and/or walk a total of six hours in an eight-hour workday. (R. at 160.) He found that Turner could occasionally reach overhead, frequently reach in all other directions, frequently handle, finger, push and pull and continuously feel. (R. at 161.) Dr. Humphries found that Turner could frequently operate foot controls with his right foot and occasionally operate foot controls with his left foot. (R. at 161.) He found that Turner could frequently stoop and crouch, occasionally climb stairs and ramps, balance and kneel and never climb ladders or scaffolds and never crawl. (R. at 162.) Dr. Humphries opined that Turner could frequently work around humidity and wetness and loud heavy traffic, occasionally work around moving machinery, occasionally operate motor vehicles and

---

[11]Tinea versicolor is defined as an eruption of tan or brown, branny patches on the skin of the trunk, caused by the fungus Pityrosporum furfur and often appearing white in contrast with hyperpigmented skin after exposure to intense sunlight. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 837 (1995.)

occasionally work around temperature extremes and never work around unprotected heights, dust, odors, fumes and pulmonary irritants and vibrations. (R. at 163.) Dr. Humphries opined that these limitations had lasted or would last for 12 consecutive months. (R. at 164.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at

264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 26, 2008, the ALJ denied Turner's claim. (R. at 16-24.) The ALJ found that the medical evidence established that Turner had severe impairments, namely degenerative disc disease, degenerative joint disease, back, knee and shoulder pain and chronic obstructive pulmonary disease, but she found that Turner's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) The ALJ also found that Turner had the residual functional capacity to perform a limited range of light work. (R. at 21.) Based on Turner's age, education, lack of work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Turner could perform, including jobs as a cashier and an unarmed security guard. (R. at 23-24.) Thus, the ALJ found that Turner was not under a disability as defined under the Act and was not eligible for benefits. (R. at 24.) *See* 20 C.F.R. § 416.920(g).

Turner argues that the ALJ's decision is not based on substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-9.) In particular, Turner argues that the ALJ's residual functional capacity determination is not supported by substantial evidence. (Plaintiff's Brief at 5-8.) Turner further argues that the ALJ did not pose a hypothetical question to the vocational expert which included all of his limitations. (Plaintiff's Brief at 9.) Turner does not challenge the ALJ's finding as to his mental impairments or his mental residual functional capacity.

The ALJ in this case found that the medical evidence established that Turner had severe impairments, namely degenerative disc disease, degenerative joint disease, back, knee and shoulder pain and chronic obstructive pulmonary disease. (R. at 18-19.) The ALJ also found that Turner had the residual functional capacity to perform a limited range of light work. (R. at 21.) Based on my review of the record, I find that substantial evidence exists to support this finding.

The ALJ noted that she was rejecting Dr. Forehand's opinion to the extent that it indicated that Turner was disabled from all work because his objective findings and Turner's sparse treatment history did not support his conclusion. (R. at 19.) *See* 20 C.F.R. § 416.927(c)(2) (2010); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (noting that if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight). The ALJ also properly gave Dr. Forehand's opinion less weight because it was made pursuant to Turner's application for black lung benefits, and the standard used by the Department of Labor is not the same standard as that applied in Social Security cases. *See* 20 C.F.R. § 416.904 (2010) (stating that determinations made by any other governmental agency that an individual is unable to work are not binding on the Commissioner); *see also DeLoatche v. Heckler*, 715 F.2d 148, 150 n.1 (4th Cir. 1983) (noting that determinations of disability under differing criteria are not binding upon the Commissioner with respect to claims for Social Security disability benefits).[12] Thus, I find that the ALJ properly rejected Dr. Forehand's opinion to the

---

[12]Specifically, the regulations concerning black lung benefits state that an individual is disabled for purposes of receiving black lung benefits if the individual has a pulmonary or respiratory impairment which, standing alone, prevents the miner from performing his usual coal mine work and from engaging in gainful employment in the immediate area of his residence requiring the skills or abilities comparable to those of any employment in a mine or mines in

extent that he opined that Turner was unable to perform any job.[13] *See Shinaberry v. Comm'r of Soc. Sec. Admin.*, 535 F. Supp. 2d 604, 631 (N.D. W.Va. 2008) (holding that entitlement to black lung benefits does not necessarily establish total disability under the Social Security Act, as ultimate responsibility for determining whether an individual is disabled under the law rests with the Commissioner).

Contrary to Turner's assertion, the ALJ's residual functional capacity assessment clearly indicates which of Dr. Humphries's limitations it included. (Plaintiff's Brief at 5-8.) The ALJ's residual functional capacity finding specifically refers to those limitations included on page four of Dr. Humphries's written report. (R. at 20.) The only limitations enumerated on page four of exhibit C11F are that Turner would be limited to sitting, standing and walking six hours in an eight-hour workday, lifting items weighing up to 25 pounds occasionally and up to 10 pounds frequently, occasionally climbing, kneeling and crawling and no exposure to heights, hazards or fumes. (R. at 157.) In fact, the ALJ noted in her decision that Dr. Humphries "believed the claimant could sit, stand, or walk 6 hours in an 8 hour work day, could lift 25 pounds occasionally, 10 pounds frequently, was limited to occasional climbing, kneeling, and crawling, and should avoid heights, hazards, and fumes." (R. at 20.) Therefore, the ALJ's decision, when read as a whole, clearly

---

which he previously engaged with some regularity over a substantial period of time. *See* 20 C.F.R. § 718.204(b)(1). This standard is significantly different from the standard applied in disability cases, whereby Turner must have a disabling impairment that is so severe that it prevents him from engaging in his past relevant work or any other substantial gainful activities that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (2010); 20 C.F.R. § 416.905(a) (2010).

[13]Additionally, Turner testified that his application for black lung benefits had been denied, indicating that he did not meet the Department of Labor's lesser standard for showing that he was unable to perform the coal mining job. (R. at 196-97.)

indicates which limitations the ALJ included in the residual functional capacity assessment.

Turner further contends that the ALJ did not comply with Social Security Ruling 96-8p.[14] (Plaintiff's Brief at 6-7.) I find this argument is without merit. I first note that the Fourth Circuit has held that Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act that do not have the force of law, but are entitled to deference unless they are clearly erroneous or inconsistent with law. *See Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). Title 20 C.F.R. § 416.945(b) states that, when assessing physical abilities, "we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." The ALJ's discussion of Turner's benign clinical findings, coupled with her finding that Turner could perform a limited range of light work, fully satisfied S.S.R. 96-8p. The ALJ adequately explained her determination in narrative form, provided a comprehensive summary of Turner's testimony, including descriptions of his activities of daily living and allegations of functional limitations, she reviewed what medical evidence existed, highlighted evidence supportive of the residual functional capacity finding, evaluated Turner's credibility and addressed the opinion evidence in the record, as well as her prior decision that Turner was capable of a limited range of light work. (R. at 16-24.)

---

[14]S.S.R. 96-8p states, in relevant part, as follows: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. ..." *See* S.S.R. 96-8p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West 2010 Supp).

Turner further argues that the ALJ's hypothetical question to the vocational expert was flawed. (Plaintiff's Brief at 9.) The ALJ's hypothetical indicated which of Dr. Humphries's limitations it included. The ALJ specifically asked the vocational expert to consider a hypothetical individual with a need to occasionally sit/stand in place for brief stretch breaks, as well as the limitations set forth in Dr. Humphries's "check-off assessment sheet" starting at Exhibit C11F page 6. (R. at 173.) The record contains only one checklist assessment from Dr. Humphries; therefore, there is no question that the ALJ's hypothetical question referred the vocational expert to Exhibit C11F pages six through 11. (R. at 159-64.)

This assessment indicated that Turner could frequently lift and/ or carry items weighing up to 10 pounds, occasionally lift and/or carry items weighing up to 20 pounds and never lift and/or carry items weighing up to 50 pounds. (R. at 159.) Dr. Humphries found that Turner could sit, stand and/or walk for up to two hours without interruption and that he could sit, stand and/or walk a total of six hours in an eight-hour workday. (R. at 160.) He found that Turner could occasionally reach overhead, frequently reach in all other directions, frequently handle, finger, push and pull and continuously feel. (R. at 161.) Dr. Humphries found that Turner could frequently operate foot controls with his right foot and occasionally operate foot controls with his left foot. (R. at 161.) He found that Turner could frequently stoop and crouch, occasionally climb stairs and ramps, balance and kneel and never climb ladders or scaffolds and never crawl. (R. at 162.) Dr. Humphries opined that Turner could frequently work around humidity and wetness and loud heavy traffic, occasionally work around moving machinery, occasionally operate motor vehicles and occasionally work around temperature extremes and never work around unprotected heights, dust,

odors, fumes and pulmonary irritants and vibrations. (R. at 163.)

In response to the ALJ's hypothetical question, the vocational expert testified that, with the limitations in Dr. Humphries's checklist opinion, there would be jobs available that such a hypothetical individual could perform, including jobs as a cashier and an unarmed security guard. (R. at 173-74.) While Turner is correct to point out that the hypothetical question included more limitations than those ultimately incorporated in the residual functional capacity finding, the vocational expert still identified jobs that Turner could perform with these additional, more restrictive limitations as those set forth in Dr. Humphries's checklist assessment. Therefore, even assuming that the ALJ erred, any error would be harmless because there were jobs that Turner could perform under either of Dr. Humphries's assessments, indicating that Turner could perform a limited range of light work.

For all of these reasons, I find that substantial evidence exists in the record to support the ALJ's residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Turner's residual functional capacity;

2. Substantial evidence exists to support the ALJ's finding that a significant number of jobs exist in the national economy

that Turner could perform; and

3. Substantial evidence exists to support the ALJ's finding that Turner was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Turner's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the

Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: November 12, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE